IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CROWN COAL & COKE COMPANY**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:12cv222 |
| | ) | **Electronic Filing** |
| **POWHATAN MID-VOL COAL** | ) | |
| **SALES, L.L.C.** a/k/a **POWHATTAN** | ) | |
| **MID-VOL COAL SALES, LLC,** | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

Crown Coal & Coke Company ("Crown") commenced this action against Powhatan Mid-Vol Coal Sales, LLC ("Powhatan") seeking redress for: (1) breach of contract, (2) unjust enrichment, (3) promissory estoppel and (4) an accounting. Powhatan answered and counterclaimed for (1) breach of contract, (2) unjust enrichment and (3) fraudulent misrepresentation. Presently before this court is Crown's motion to dismiss Powhatan's counterclaims and strike all corresponding additional defenses. For the reasons set forth below, the motion will be granted in part and denied in part.

It is well-settled that in reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "[t]he applicable standard of review requires the court to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). Under the Supreme Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 561 (2007), dismissal of a complaint pursuant to Rule 12(b)(6) is proper only where the averments of the complaint plausibly fail to raise directly or inferentially the material elements necessary to obtain relief under a viable legal theory of recovery. Id. at

544.  In other words, the allegations of the complaint must be grounded in enough of a factual

basis to move the claim from the realm of mere possibility to one that shows entitlement by

presenting "a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, – U.S. –, 129 S. Ct.

1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).

A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Id.  In contrast, pleading facts that only offer "'labels or conclusions' or 'a formulaic recitation of

the elements of a cause of action will not do,'" nor will advancing only factual allegations that

are merely consistent with a defendant's liability.  Id.  Similarly, tendering only "naked

assertions" that are devoid of "further factual enhancement" falls short of presenting sufficient

factual content to permit an inference that what has been presented is more than a mere

possibility of misconduct.  Id. at 1949-50; see also Twombly, 550 U.S. at 563 n. 8  (A complaint

states a claim where its factual averments sufficiently raise a "'reasonably founded hope that the

[discovery] process will reveal relevant evidence' to support the claim.") (quoting Dura

Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 347 (2005) & Blue Chip Stamps v. Manor Drug

Stores, 421 U.S. 723, 741 (1975)); accord Morse v. Lower Merion School Dist., 132 F.3d 902,

906 (3d Cir. 1997) (a court need not credit "bald assertions" or "legal conclusions" in assessing a

motion to dismiss) (citing with approval Charles Alan Wright & Arthur R. Miller, FEDERAL

PRACTICE AND PROCEDURE § 1357 (2d ed.1997) ("courts, when examining 12(b)(6) motions,

have rejected 'legal conclusions,' 'unsupported conclusions,' 'unwarranted inferences,'

'unwarranted deductions,' 'footless conclusions of law,' or 'sweeping legal conclusions cast in the

form of factual allegations.'").

This is not to be understood as imposing a probability standard at the pleading stage.

Iqbal, 129 S. Ct. at 1949 ("The plausibility standard is not akin to a 'probability requirement,' but

it asks for more than a sheer possibility that a defendant has acted unlawfully."); <u>Phillips v.</u>

<u>County of Allegheny</u>, 515 F.3d 224, 235 (3d Cir. 2008) (same).  Instead, "[t]he Supreme Court's

<u>Twombly</u> formulation of the pleading standard can be summed up thus: 'stating ... a claim

requires a complaint with enough factual matter (taken as true) to suggest the required element ...

[and provides]  enough facts to raise a reasonable expectation that discovery will reveal evidence

of the necessary element.'" <u>Phillips</u>, 515 F.3d at 235; <u>see</u> <u>also</u> <u>Wilkerson v. New Media</u>

<u>Technology Charter School Inc.</u>, 522 F.3d 315, 321 (3d Cir. 2008) ("The complaint must state

'enough facts to raise a reasonable expectation that discovery will reveal evidence of the

necessary element.'") (quoting <u>Phillips</u>, 515 F.3d at 235) (citations omitted).  "Once a claim has

been stated adequately, it may be supported by showing any set of facts consistent with the

allegations in the complaint." <u>Twombly</u>, 550 U.S. at 563.

The parties' central dispute arises in the context of a specialized industry.  Powhatan sells

mid-volatile metallurgical coal used to produce coke.  Coke is an essential ingredient in the

steelmaking process and is produced by heating metallurgical coal in the absence of oxygen

inside a refectory-lined coke battery.  Coke batteries typically operate 24 hours a day, 7 days a

week at uniform temperatures.  Given these conditions, most coke producers enter into long-term

contracts with suppliers for a steady and reliable supply of coal.  Even with a long-term contract

in place, it is not uncommon for the contracting parties to renegotiate, amend, or otherwise

modify their contract due to changes in the economy, the supply and demand for steel, and/or

their specific business operations.  Therefore, from the perspective of suppliers like Powhatan, it

is critical to remain in continuous contact with their customers under long-term contract in order

to (1) monitor and better understand the customer's existing operations, (2) anticipate issues and

developments that may affect their future operations and coal needs, and (3) identify

opportunities to pursue mutually-agreeable modifications to the contract(s) that benefit the suppliers.

In May of 2004, Crown and Powhatan entered a five-year agreement in which Powhatan retained Crown to serve as its exclusive agent for all sales of Powhatan coal in North America. Under the agreement, Crown was responsible for, among other things, devoting adequate resources to (1) maximize coal sales, (2) maintain good business relations with Powhatan's coal customers, and (3) keep in contact with key personnel at companies consuming metallurgical coal. In exchange, after Powhatan's receipt of full payment for the coal deliveries, Crown was to receive a sales commission of $2.50 per ton.

The five-year term did not begin until the first production and sale of coal was made under the agreement, which occurred on July 27, 2006. By that point in time Powhatan already had long-term supply contracts in place with three major customers: Sun Coke Company, U.S. Steel and Dofasco.

Crown alleges Powhatan breached the agreement by failing to pay $ 404,896.74 in outstanding invoices. Crown asserts the parties do not dispute: (1) their agreement is valid, (2) Crown issued invoices for all coal sold while the agreement was in effect, (3) Powhatan was paid for all sales, and (4) Crown has not been paid commissions for sales made in 2011. Accordingly, Crown maintains the material terms of the agreement are clear and unambiguous and the elements of its contract claims are established as a matter of law.

In its answer Powhatan admits generally that the agreement was valid when executed, Crown was to receive commissions for sales of coal, Crown issued invoices seeking its commissions for the coal sold during 2011, and Powhatan received full payment for the coal. Nevertheless, Powhatan denies owing Crown any money and defends on the ground that the agreement was amended in August of 2007.

Moreover, Powhatan asserts that Crown has breached the agreement as amended and counterclaims for reliance damages flowing therefrom. At the time the agreement was executed the key employee to perform Crown's duties was Courtenay O. Taplin ("Taplin"). Taplin was a vice president at Crown and an experienced sales representative in the metallurgical coal industry. Taplin performed Crown's obligations under the agreement when it became operative in July of 2006 and continued to do so until the summer of 2007. At that point Taplin resigned and joined Compass Point Resources, LLC. "Taplin's resignation left Crown without a sales representative who possessed the knowledge, skill, customer relationships, and experience to perform Crown's duties and services to Powhatan." Counterclaim (Doc. No. 7) at ¶ 70.

Following Taplin's resignation, Powhatan informed Crown that Taplin's departure was a "material adverse event" that in its view would prevent Crown from being able to satisfy its obligations under the agreement. It further advised that it might be forced to terminate the agreement and pursue another sales agent.

According to Powhatan, Crown did not dispute this assessment. Instead, in August of 2007 Crown sent a letter to the president and chief executive officer of Powhatan in which Crown agreed to appoint Taplin as its agent with regard to servicing the three long-term North American customers: Sun Coke Company, U.S. Steel and Dofasco. As part of this arrangement Crown promised to (1) split its commissions with Taplin by paying him $.50 per net ton and (2) notify the aforementioned companies that Taplin would be their point of contact.

Powhatan believed that Taplin was performing the obligations of the agreement at that point by maintaining contact with the three customers, monitoring their business developments and strategies, and watching for opportunities to better Powhatan's position with them. Powhatan continued to labor under this belief until it subsequently learned that Crown had never

followed through on the representations in its letter and in fact had become embroiled in a significant dispute with Taplin regarding his departure from Crown. Id. at ¶ 78.

When Powhatan learned that Crown had not followed through on its letter indicating it would appoint Taplin to serve as Crown's agent, it likewise learned that circumstances had arisen that required Powhatan to renegotiate certain terms in the contracts with its three long-term North American customers. It believed that it was essential for Taplin to participate and assist in those undertakings. Because Crown was identified as the agent in the contracts with those customers, Powhatan was concerned that "addressing its problems with Crown's failure to perform at that time might disrupt or otherwise impair Powhatan's ability to renegotiate the terms of those contracts and obtain terms that were favorable to Powhatan." Id. at ¶ 79. In light of this concern, Powhatan utilized the services of Taplin "for the renegotiations, and continued to pay commissions to Crown, with the understanding that the parties would subsequently attempt to resolve their differences in an amicable (and private) manner." Id. at ¶ 80. Powhatan subsequently was unable to broker a resolution of the dispute between the parties, Taplin and Compass Point. The instant action followed.

Powhatan counterclaims for breach of contract and unjust enrichment. It paid commissions to Crown of $2,581,966.37 since August of 2007. It asserts Crown knew and understood that Powhatan expected that the services would be performed by Taplin in accordance with Crown's representations. It further avers that Crown neither honored the terms of the amendment nor otherwise performed its duties and services under the agreement. Thus, under either theory Powhatan maintains that Crown received the benefits of the agreement without providing the negotiated services.

Powhatan also counterclaims for fraudulent misrepresentation, alleging that when Crown stated it would appoint Taplin it knew this representation was false. Crown assertedly was aware

that it could not satisfy its duties and services under the agreement after Taplin's departure and was concerned that Powhatan would lawfully terminate the agreement. Id. at ¶ 98. Crown made the misrepresentation in order to induce Powhatan to refrain from terminating the agreement, and Powhatan, relying on the misrepresentation, did refrain from terminating and acquiring a new sales agent. Crown purportedly made the misrepresentation for the purpose of collecting millions of dollars in commissions.

Crown contends that Powhatan's counterclaim based on the alleged amendment must be dismissed for two reasons: (1) the agreement contains a provision that precludes modifications or amendments unless they are in writing and signed by all parties, and (2) the amendment fails for lack of consideration. Its claim for unjust enrichment fails because the agreement is an express contract between the parties and Crown's enrichment (receipt of sales commissions) was not unjust because Crown provided valuable services to Powhatan. Finally, Powhatan's claim for fraudulent misrepresentation assertedly is barred by the gist of the action doctrine because the claim arises from Crown's alleged failure to perform its contractual duties, any alleged understanding to appoint Taplin was grounded in the agreement, the claimed misrepresentation merely relates to Crown's ability to perform its agreed-upon duties, the claimed tort damages duplicate Powhatan's breach of contract claim and the success of the claim is dependent upon the terms of the agreement.

Powhatan maintains its breach of contract claim is proper because Crown acknowledged it could not perform the services under the agreement when Taplin resigned, agreed to appoint Taplin but failed to do so, and then failed to perform the services itself. Crown's signed letter agreeing to appoint Taplin constituted an enforceable modification under Pennsylvania law. The letter also was authored under circumstances that supplied consideration. The unjust enrichment claim properly has been raised as a form of alternative pleading because Crown disputes the

validity of the amendment and the elements can be satisfied if Powhatan cannot recover on its breach of contract claim. Finally, Powhatan contends that the gist of the action doctrine does not bar its fraudulent misrepresentation claim because Pennsylvania courts have "uniformly recognized" that misrepresentations made after a contract has been formed with the intent to induce a contracting party to refrain from exercising its contractual rights involve the breach of a duty imposed by law.

Crown's contention that the letter it signed and sent to Powhatan's president in August of 2007 cannot be found by the trier of fact to have amended the agreement because as a matter of law the written modification clause bars any such attempt is misplaced. First, it is well settled under Pennsylvania law that a written agreement can be modified or amended by a subsequent agreement. Knight v. Gulf Refining Co., 166 A. 880, 882 (Pa. 1933) ("Parties may, by subsequent oral agreement, modify a written contract which they previously have entered into. The new contract thus agreed upon is a substitute for the original one in so far as it alters, modifies, or changes it."); Friday v. Regent Improv. Co., 199 A. 914, 915 (Pa. 1938) ("It is an elementary proposition that any contract can be modified with the assent of both contracting parties, provided, of course, the modification does not conflict with law or public policy."); Pellegrene v. Luther, 169 A.2d 298, 299 (Pa. 1961) (The modern parol evidence rule does not displace the well settled principle "that a written agreement can be modified by a subsequent oral agreement provided the latter is based upon a valid consideration and is proved by evidence which is clear, precise and convincing."). When a contract is amended by a subsequent agreement, the terms of the original contract that are not modified or changed remain effective.

Knight, 166 A. at 882. Proof of the amended or modified terms can be proved "by parol by showing either an express agreement or actions which necessarily involve a change." Id.[1]

Second, a contractual provision prohibiting any modification unless it is in writing is not fatal to amending a contract because such provision can be waived. Wagner v. Graziano Constr. Co., 136 A.2d 82, 84 (Pa. 1957) (Musmanno, J.) ("[e]ven where the contract specifically states that no non-written modification will be recognized, the parties may yet alter their agreement by parol negotiation. The hand that pens a writing may not gag the mouths of the assenting parties."); First Nat'l Bank v. Lincoln Nat'l Life Ins. Co., 824 F.2d 277, 281 (3d Cir. Pa. 1987) (a modification to a contract that is proven by clear, precise, and convincing evidence "is valid despite a provision in the original written agreement prohibiting non-written modifications"). Indeed, "[t]here is nothing sacrosanct about a written agreement" and even "[t]he most ironclad written contract can always be cut into by the acetylene torch of parol modification supported by adequate proof." Wagner, 136 A.2d at 84 (citing Achenbach v. Stoddard, 253 Pa. 338, 343 (Pa. 1916) ("It is always competent for the parties to a written contract to show that it was subsequently abandoned in whole or in part, modified, changed, or a new one substituted. And this may be shown by parol, by showing either an express agreement or actions necessarily involving the alterations."); Universal Builders, Inc. v. Moon Motor Lodge, Inc., 244 A.2d 10, 16 (Pa. 1968) (a "contract can be modified orally although it provides that it can be modified only in writing.") (citing Wagner, 136 A.2d at 82; 4 WILLISTON ON CONTRACTS § 591 (3rd ed. 1961); 6 CORBIN ON CONTRACTS § 1295 (1962); Restatement of Contracts § 407 (1932)).

---

[1] The parol evidence rule does not bar evidence of a subsequent change from admission because the rule "does not apply to or prohibit a subsequent modification by parol; it applies only to prior or contemporaneous statements or agreements which induced the written agreement in question." Elliott-Lewis Corp. v. York-Shipley, Inc., 94 A.2d 47 (Pa. 1953) (citing Grubb v. Rockey, 79 A.2d 255, 258 (Pa. 1951)).

Powhatan's allegations, if ultimately proven to and accepted by the trier of fact, will establish that Taplin worked as an employee for Crown when the agreement was executed and the parties understood that Taplin would perform Crown's duties thereunder.  Taplin performed those duties under the agreement until he joined Compass Point in the summer of 2007. Powhatan informed Crown that, in Powhatan's viewed, Crown did not at that point have personnel with the requisite skills to perform Crown's obligations going forward.  Rather than disputing this assessment or otherwise asserting its contractual rights, Crown proposed and ultimately agreed to appoint Taplin as Crown's agent for the purpose of fulfilling the agreement. Crown signed a letter acknowledging its acceptance of this change of terms and further committed to provide the North American companies with notice of the change.  Powhatan paid commissions pursuant to that understanding.  It subsequently learned that Crown failed to appoint Taplin or otherwise perform its duties under the agreement.

Powhatan's allegations based on the asserted amendment and Crown's performance of the contract are sufficient to establish a claim for breach of contract that is plausible on its face.   The facts surrounding Crown's letter, when taken as true, provide plausible grounds from which Pennsylvania's law governing modification of written agreements containing a non-written modification provision may be determined to have been satisfied.  Further, the factual allegations provide a reasonable expectation that discovery will generate evidence to support the claim. Accordingly, Crown's efforts to dismiss the counterclaim on the grounds of the agreement as originally drafted and its non-modification provision are unavailing.

Crown's attempt to establish that as a matter law the asserted amendment fails for a lack of consideration also is wide of the mark.   Crown asserts that the agreement simply designated "Crown" as the entity responsible for performance and it remained willing and able to perform the agreement.  Powhatan agreed to pay sales commissions for the coal sold under the agreement

and cannot show that Crown's performance caused Powhatan to suffer any loss of sales. Against this backdrop Powhatan cannot prove that Crown had anticipatorily repudiated its obligations or that Powhatan had a right to stop paying commissions or otherwise terminate the agreement. In other words, Powhatan cannot establish any form of forbearance on its behalf; it can only show that the parties complied with their pre-existing obligations and thus were doing and did what they already were obligated to do. As a result, Powhatan's counterclaim fails for lack of consideration.

Powhatan argues that the amendment was supported by consideration in two distinct ways. First, it posits that neither party had the right to insist that Taplin be appointed as Crown's agent under the agreement. Crown did not have the right to appoint Taplin; Powhatan did not have the right to insist that Taplin be appointed. Powhatan could have insisted that Crown perform the agreement and Crown could have insisted that it perform the agreement. Thus, by agreeing to appoint Taplin both parties agreed to forgo rights they could have exercised under the agreement prior to the amendment.

Second, Powhatan maintains that Crown could not perform the agreement after Taplin's departure and it communicated this to Crown. Powhatan further avers that Crown acknowledged that it could not perform at that juncture. Thus, Powhatan maintains that Crown had communicated a sufficient statement to establish its unequivocal inability to perform and as a result Powhatan had the right to treat Crown as committing an anticipatory beach; that breach gave Powhatan the right to terminate the agreement and its promise not to do so provided consideration for the amendment.

"It is axiomatic that consideration is 'an essential element of an enforceable contract.'" Pennsy Supply, Inc. v. Am. Ash Recycling Corp. of Pa., 895 A.2d 595, 600 (Pa. Super. 2006) (quoting Stelmack v. Glen Alden Coal Co., 14 A.2d 127, 128 (Pa. 1940)). Consideration is

present when there is "a benefit to the promisor or a detriment to the promisee." Id. (quoting Weavertown Transport Leasing, Inc. v. Moran, 834 A.2d 1169, 1172 (Pa. Super. 2003). But "[i]t is not enough, however, that the promisee has suffered a legal detriment at the request of the promisor. The detriment incurred must be the 'quid pro quo', or the 'price' of the promise, and the inducement for which it was made." Stelmack, 14 A.2d at 128-29; accord Cardamone v. University of Pittsburgh, 384 A.2d 1228, 1232 n. 6 (Pa. Super. 1978) ("Valid 'consideration' confers a benefit upon the promisor or causes a detriment to the promisee and must be an act, forbearance or return promise bargained for and given in exchange for the original promise.") (citing Hillcrest Foundation Inc. v. McFeaters, 2 A.2d 775, 778 (Pa. 1938)). In other words, as stated by Justice Oliver Wendell Holmes, Jr., "the promise must induce the detriment and the detriment must induce the promise." Pennsy Supply, 895 A.2d at 601 (citing John Edward Murray, Jr., MURRAY ON CONTRACTS § 60 (3d. ed.1990), at 227 (quoting Wisconsin & Michigan Ry. v. Powers, 191 U.S. 379 (1903)). As explained by Professor Murray:

> If the promisor made the promise for the purpose of inducing the detriment, the detriment induced the promise. If, however, the promisor made the promise with no particular interest in the detriment that the promisee had to suffer to take advantage of the promised gift or other benefit, the detriment was incidental or conditional to the promisee's receipt of the benefit. Even though the promisee suffered a detriment induced by the promise, the purpose of the promisor was not to have the promisee suffer the detriment because she did not seek that detriment in exchange for her promise.

Id. (quoting MURRAY ON CONTRACTS at § 60.C, at 230); accord Weavertown, 834 A.2d at 1172 ("If the promisor merely intends to make a gift to the promisee upon the performance of a condition, the promise is gratuitous and the satisfaction of the condition is not consideration for a contract.") (quoting Stelmack, 14 A.2d at 128-29).

"Whether a contract is supported by consideration presents a question of law." Pennsy Supply, 895 A.2d at 601 (citing Davis & Warde, Inc. v. Tripodi, 616 A.2d 1384 (Pa. Super.

1992). And whether a set of facts alleged by a particular party presents sufficient consideration to support a contract is a question of law. Id. Of course, a determination that a set of allegations present a sufficient basis to establish consideration does not relieve the party from proving those allegations. Cf. Pennsy Supply, 895 A.2d at 602 ("Accepting these allegations as true and using the Holmesian formula for consideration, it is a fair interpretation of the Complaint that American Ash's promise to supply AggRite free of charge induced Pennsy to assume the detriment of collecting and taking title to the material, and critically, that it was this very detriment, whether assumed by Pennsy or some other successful bidder to the paving subcontract, which induced American Ash to make the promise to provide free AggRite for the project. Paragraphs 8-9 of the Complaint simply belie the notion that American Ash offered AggRite as a conditional gift to the successful bidder on the paving subcontract for which American Ash desired and expected nothing in return.").

"Clearly performance of that which one is already legally obligated to do is not consideration sufficient to support a valid agreement." Cohen v. Sabin, 307 A.2d 845, 849 (Pa. 1973). "Similarly, the surrender of a nonexistent legal right is insufficient consideration." Pennsylvania State Univ. v. Univ. Orthopedics, Ltd., 706 A.2d 863, 873 (Pa. Super. 1998).

But "it is equally clear that a compromise of a doubtful or disputed claim is proper and 'that surrender or compromise of a doubtful claim and forbearance to sue thereon is sufficient consideration.'" Cohen. 307 A.2d at 849 (quoting Lombardo v. Gasparini Excavating Co., 123 A.2d 663, 665 (Pa. 1956) and citing Kefover v. Potter Title and Trust Co., 181 A. 771 (1935); Miller's Estate, 123 A. 646 (1924); and Island Block Corp. v. Jefferson Const. Overseas, Inc., 349 F.2d 322, 327 (3d Cir. 1965)); accord Brightly v. McAleer, 3 Pa. Super. 442, 443 (1896) ("While in general it is true that a mere agreement to accept a smaller sum in discharge of a larger, is not binding for want of consideration, yet a contract made in compromise and

settlement of a disputed and doubtful claim is binding."); Fink v. Farmers' Bank, 35 A. 636, 638 (Pa. 1896) (same); Pennsylvania State Univ., 706 A.2d at 873 (same). The sufficiency of the consideration in such settings does not turn on the validity of the disputed claim. Rivers v. Delaware Val. Mut. Cas. Co., 175 A.2d 87, 89 (Pa. Super. 1961) ("The compromise of disputed claims, whether in fact valid or not, furnishes sufficient consideration for an agreement of compromise.") (citing Gaynor v. Quinn, 61 A. 944 (Pa. 1905). Only a showing that the forbearing party (1) knew the claim or defense did not exist or was invalid or (2) lacked an honest and reasonable belief in the validity of the claim or defense will render the transaction to be without consideration. Lombardo, 123 A.2d at 665 ("forbearance to assert an invalid claim by one who has not an honest and reasonable belief in its possible validity is not sufficient consideration."); Crown, 236 A.2d at 534 ("Forbearance to assert an invalid claim, or to interpose an invalid defense to a valid claim, by one who does not have an honest and reasonable belief in its possible validity is not considered sufficient consideration.") (citing Falgiatore v. Falgiatore, 107 A.2d 864 (Pa. 1954). Similarly, the surrendering of a nonexistent legal right will not supply sufficient consideration. Pennsylvania State Univ., 706 A.2d at 873 (citing Thomas v. Hill Top Section etc., 103 A. 504 (1918).

Crown's position that Powhatan cannot show it had an unequivocal right to terminate the contract or otherwise stop paying commissions after Taplin's departure is unavailing. Powhatan need not demonstrate that Crown actually was in breach or that Crown unequivocally announced its intention not to perform at that juncture. Pennsylvania law does not demand such levels of certainty and/or exactitude to establish sufficient consideration for a binding compromise.

"The sufficiency of the consideration for a compromise is not to be determined by the soundness of the original claim of either party. The very object of compromise is to avoid the risk or trouble of that question." Fink, 35 A. 638. It is enough that the party have a basis to

found a claim that "would have been open to doubt." Id. And this is so regardless of whether the asserted claim was made and received in a hostile or amicable spirit. Id.

Here, sufficient consideration for the amendment will be established if Powhatan can convince the trier of fact that (1) it had an honest and reasonable belief that Taplin's departure left Crown without a sales representative who had the knowledge, skill, customer relationships, and experience to perform its duties and services and (2) this then-existing state of affairs gave Powhatan at least a doubtful basis to terminate the agreement or otherwise stop paying commissions. Assuming Powhatan can prove these facts, which are either averments in its counterclaim or within the scope of the reasonable inferences to be drawn therefrom, Powhatan may be able to convince the trier of fact that Crown's agreement to appoint was a bargained-for exchange in compromise, which in turn would have been supported by consideration. It follows that the counterclaim cannot be dismissed for lack of consideration.

Crown's assertion that Powhatan cannot show recoverable damages because it does not allege a loss of sales likewise misses the mark. "In general, contract law espouses three distinct, yet equally important, theories of damages to remedy a breach of contract: 'expectation' damages, 'reliance' damages, and 'restitution' damages." ATACS Corp. v. Trans World Communications, Inc., 155 F.3d 659, 669 (3d Cir. 1998) (citing Trosky v. Civil Serv. Comm'n, 652 A.2d 813, 817 (Pa. 1995)). Expectation damages are the preferred approach because they place the injured party in the position that would have resulted from receiving the benefit of the bargain. Id. The standard measurement for such damages are recovery of "the losses caused and gains prevented by defendant's breach, to the extent that are in excess of any savings made possible by nonperformance." Id. (citing American Air Filter Co. v. McNichol, 527 F.2d 1297, 1299 (3d Cir.1975)).

Reliance damages may be pursued where the ability to recover expectation damages "is clouded because of the uncertainty in measuring the loss in value to the aggrieved contracting party." Id. (citing Restatement (Second) of Contracts § 349 cmt. a (1981); 5 Arthur L. Corbin, CORBIN ON CONTRACTS, § 1031, at 188 (1963)). Under this approach the law seeks to protect the injured party' reliance interest by placing it in the position it would have occupied had the contract never been made, which usually encompasses the recovery of actual expenditures incurred in performance or in anticipation thereof. Id. (citing DePaolo v. DeRomo, 31 A.2d 158, 161 (Pa. 1943); In re Kellett Aircraft Corp., 191 F.2d 231, 236 (3d Cir.1951); 5 Arthur L. Corbin, supra, § 1031, at 188).

Damages under a theory of restitution also can provide an appropriate measure of relief where the injured party's ability to recover is clouded or otherwise not feasible. The objective of this approach "is not the enforcement of contracts through the protection of an injured party's expectation or reliance interests, but is instead rooted in common notions of equity through the protection of the injured's restitution interest." Id. (citing Fidelity Fund, Inc. v. DiSanto, 500 A.2d 431, 438 (Pa. Super. 1985); 5 Arthur L. Corbin, supra, § 1101, at 548; Restatement, supra, Ch. 16, Topic 4, intro. note, at 199). Under this theory the breaching party must disgorge the benefits received to the party who conferred them. Id. (citing Trosky, 652 A.2d at 817). The propriety of such a recovery generally is governed by the traditional principles of equity, such as those utilized under unjust enrichment or forfeiture. Id. (citing DiSanto, 500 A.2d at 438-39).

A party may elect the remedy of restitution but its decision to do so is at the exclusion of the other compensatory remedies. See Smith v. Brink, 561 A.2d 1253, 1255 (Pa. Super. 1989) ("the injured party may either rescind the contract and seek restitution, or enforce the contract and recover [compensatory damages]"); Clement Martin, Inc. v. Gussey, 157 A.2d 412, 416 (Pa. 1960). The injured party's retention of any benefit received under the contractual undertaking

bars rescission. See Hahn v. Andrews, 126 A.2d 519, 521 (Pa. 1957) (the "plaintiff cannot retain some of the benefits under the agreement and at the same time rescind the agreement.").

Powhatan apparently has made an election to pursue reliance damages. See Powhata's Brief in Opposition (Doc. No. 16) at 16 ("Powhatan's reliance damages, or the 'cost of its performance' under the Agreement, are $2,581,966.37 that it paid for services that Crown did not provide.") (citing Counterclaim at ¶ 83). Reliance damages are "an alternative to the recovery of lost profits, not a measure of additional damages." National Controls Corp. v. National Semiconductor Corp., 833 F.2d 491, 499 (3d Cir. 1987) (citing Restatement (Second) of Contracts §§ 347, 349). Reliance damages are limited to those amounts which reasonably were expended in preparation of or during performance. Id. They thus generally should be the same as those which represent the non-breaching party's cost of performance in a calculation of expectation damages. An injured party is entitled to recover "either reimbursement for its expenses or its net profits but not both." Id.

Here, the parties dispute whether Crown performed its duties under the agreement and whether Powhatan suffered any injury as a result of Crown's performance or lack thereof. Assuming that Powhatan can prove a material breach by Crown, Powhatan may be able to prove (1) it did not receive any benefit from Crown's asserted performance and therefore (2) its entitlement to all of the costs of its performance. In contrast, Crown may be able to prove that its proper performance would have resulted in Powhatan recovering less than its claimed reliance damages. If it meets this burden, Powhatan would be relegated to the recovery of that lesser amount of its reliance damages. Crown also may be able to prove that it did properly perform some or all of its obligations after August of 2007. If it meets this burden, Powhatan would be relegated to the recovery of the lesser amount of its reliance damages, if any, that are determined to be due after the finder of fact makes an adjustment for the performance Crown actually did

perform. Such an adjustment would be equivalent to the net profits or gains that Powhatan reaped from Crown's performance. These matters must be presented to and resolved by the finder of fact because Crown contends through its own breach of contract claim that it performed its duties; and in any event a breaching party always may show that a lesser amount than the non-breaching party's reliance damages would have been obtained in the absence of the breach. See 5 Corbin, CORBIN ON CONTRACTS, § 1004, 42 (1964). Recognition of this principle is necessary in order to allocate properly the risk of a party striking a bad bargain. Id.; accord Restatement (Second) of Contracts, § 349 ("As an alternative to the measure of damages stated in § 347, the injured party has a right to damages based on his reliance interest, including expenditures made in preparation for performance or in performance, *less any loss that the party in breach can prove with reasonable certainty the injured party would have suffered had the contract been performed.*") (emphasis added); John Edward Murray, Jr., MURRAY ON CONTRACTS, § 119, 781 & n. 67 (4th ed. 2001) (citing L. Albert & Son v. Armstrong Rubber Co., 178 F.2d 182, 191 (2d Cir. 1949) (L. Hand, J.) ("We will not in a suit for reimbursement of losses incurred in reliance on a contract knowingly put the plaintiff in a better position than he would have occupied, had the contract been fully performed.").

In short, the parties' contentions concerning performance and results, or the lack thereof, create significant and difficult damage issues to be resolved by the trier of fact. But it cannot be said under this state of affairs that Powhatan has no basis to generate evidence to show entitlement to a recovery for the alleged breach, and therefore this ground for dismissal must be rejected.

Powhatan's claim for unjust enrichment stands on different footing. Recovery under quasi-contract is proper when one party receives unjust enrichment at the expense of another. AmeriPro Search, Inc. v. Fleming Steel Co., 787 A.2d 988, 991 (Pa. Super. 2001) (citing

<u>Birchwood Lakes Community Assoc. v. Comis</u>, 442 A.2d 304, 308 (Pa. Super. 1982).  A duty is imposed "not as a result of any agreement, whether express or implied, but in spite of the absence of an agreement."  <u>Id.</u>

The doctrine in based in equity.  The elements necessary for recovery are that a benefit was conferred on the defendant by the plaintiff, the defendant appreciated the benefit, and the defendant's acceptance and retention of the benefit occurred under such circumstances that it would be inequitable for the defendant to retain it without payment.  <u>Id.</u>  Because the doctrine is grounded in equity it is not concerned with the intention of the parties but instead on whether the defendant has been unjustly enriched.  <u>Id.</u>  (citing <u>Styer v. Hugo</u>, 619 A.2d 347, 350 (Pa. Super. 1993)).  "The most significant element of the doctrine is whether the enrichment of the defendant is unjust; the doctrine does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff."  <u>Id.</u>  Where unjust enrichment has occurred the law imposes a quasi-contract which requires the defendant to pay the value of the benefit conferred.  <u>Id.</u> (citing <u>Schenck v. K.E. David, Ltd.</u>, 666 A.2d 327, 328-329 (Pa. Super. 1995).  In other words, the defendant is required to pay restitution in quantum meruit.  <u>Id.</u> (citing <u>Schenck</u>, 666 A.2d at 329.

"By its nature, the doctrine of quasicontract, or unjust enrichment, is inapplicable where a written or express contract exists."  <u>Lackner v. Glosser</u>, 892 A.2d 21, 34 (Pa. Super. 2006) (citing <u>Mitchell v. Moore</u>, 729 A.2d 1200, 1203 (Pa. Super.1999)).  Here, the unjust enrichment claim is based on Crown's receipt of commissions pursuant to a written long-term service agreement.  The parties vehemently dispute whether Crown could and/or did perform the contractual services.  Because the factual determinations that will necessarily be made pursuant to the parties' cross breach of contract claims have the potential to provide plaintiff with complete relief, an unjust enrichment claim currently cannot be maintained against Crown.  Therefore,

Crown's motion to dismiss the unjust enrichment claim will be dismissed without prejudice to its reinstatement in the event further proceedings lead to an equitable basis for asserting the claim.

Finally, Powhatan's fraudulent misrepresentation claim is barred by the gist of the action doctrine because it is an impermissible duplication of its contract claim. The gist of the action doctrine "is designed to maintain the conceptual distinction between breach of contract claims and tort claims." eToll, Inc. v. Ellias/Savion Advertising, Inc., 811 A.2d 10, 14 (Pa. Super. 2002). "As a practical matter, the doctrine precludes plaintiffs from recasting ordinary breach of contract claims into tort claims." Id.

In general, the difference between contract claims and tort claims depends upon the origin of the duties alleged to have been breach by the defendant's conduct. "Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals." Id. (quoting Bash v. Bell Tel. Co., 601 A.2d 825, 829 (Pa. Super. 1992)).

To be sure, the two causes of action are not mutually distinct. Id. To the contrary, it is quite "possible that breach of contract also gives rise to an actionable tort." Id. But "to be construed as in tort, however, the wrong ascribed to [the] defendant must be the gist of the action, the contract being collateral." Id. (quoting Bash, 106 A.2d at 829). "In other words, a claim should be limited to a contract claim when 'the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied in the law of torts.'" Id. (quoting Bohler-Uddeholm Am., Inc., v. Ellwood Group, Inc., 247 F.3d 79, 104 (3d Cir. 2001), cert. denied, 534 U.S. 1162 (2002)).

Whether the gist of the action doctrine applies in any particular setting is a question of law. Id. In making that determination the court is to consider both the nature of the action as a

whole and the essential ground, foundation or material parts giving legal effect to the plaintiff's complaint.  As a number of courts have observed:

> The test is not limited to discrete instances of conduct; rather, the test is, by its own terms, concerned with the nature of the action as a whole.  "Gist" is a term of art in common law pleading that refers to the "essential ground or object of the action in point of law, without which there would be no cause of action."  Blacks Law Dictionary 689 (6th ed. 1990).  "Action" is defined by Black's Law Dictionary as "a lawsuit brought in a court; a formal complaint within the jurisdiction of a court of law ... the "gist of the action" tests, then, is a general test concerned with the "essential ground," foundation or material part of an entire "formal complaint" or lawsuit.

eToll, 811 A.2d at 15 (quoting American Guar. and Lia. Ins. Co., v. Fojanini, 90 F. Supp.2d 615, 622-23 (E.D. Pa. 2000)).

In general, the courts have applied the gist of the action doctrine to bar tort claims in four separate settings: (1) were the claims arise from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where a tort claim essentially duplicates a breach of contract claim or its success is wholly dependent on the terms of a contract.  eToll, 811 A.2d at 20.

Crown aptly notes that each of these factors demonstrates that the gist of the parties' dispute is in contract.  Both parties' claims against the other arise from the agreement; each alleges the other breached the agreement; each seeks liability and damages grounded in and flowing from the agreement; and Powhatan's tort claim seeks the same compensatory damages as its contract claim.  The wrong about which Powhatan complains is grounded in the agreement and Powhatan seeks to recover for obligations created by the agreement.  Its tort claim clearly is collateral to its contract claim.  It follows that the gist of Powhatan's counterclaim is in contract.

Moreover, Powhatan's assertion that "Pennsylvania courts have uniformly recognized that fraud claims involving misrepresentations made after a contract has been formed, in order to

induce a contracting partner to refrain from exercising its rights under the contract . . . are not []

barred by the gist of the action doctrine" is specious.  In the well-reasoned and well-followed

opinion handed down in eToll, the Superior Court determined that "the gist of the action doctrine

should apply to claims for fraud in the performance of a contract."  Id.  This assessment is the

settled law of Pennsylvania until the Supreme Court of Pennsylvania decides otherwise.

Of course, the doctrine permits the advancement of a tort claim where a contract claim is

collateral to the tort.  But as Powhatan concedes, merely advancing allegations that the other

party either failed to follow through with a representation regarding its subsequent contractual

performance, whether negligently or intentionally,  is precisely the type of scenario where

"[c]ourts have generally invoked the gist of the action doctrine to bar a tort claim."  Powhatan's

Brief in Opposition (Doc. No. 16) at 9 (quoting PPG Indus., Inc. v. Generon ISG, Inc., 760 F

Supp.2d 520, 527 (W.D. Pa. 2011).  The gist of Powhatan's allegations squarely set forth just

such a scenario.

Powhatan's arguments to the effect that when Crown made the representations regarding

Taplin it did so for the purpose of precluding Powhatan from exercising its rights to terminate

and therefore Powhatan was duped into continuing to make payments pursuant to the agreement

merely bolsters the grounds for application of the doctrine.  Making boiler plate allegations that a

defendant's failure to live up to its contractual obligations proves that the statements concerning

its ability to perform were false, fraudulent or misleading reflects nothing more than the epitome

of a self-serving attempt to bootstrap a contract claim into one for fraud.  Of course, "adding the

words 'falsely' and 'negligently' to the representations made in the course of *reaching* an

agreement does not convert what is essentially a breach of contract action into a fraud and

negligence claim."  Bishop v. GNC Franchising, LLC, 403 F. Supp.2d 411, 417  (W.D. Pa. 2005)

(citing Galbieri v. Monsanto Co., 245 F. Supp.2d 636, 650 (E.D. Pa. 2002) ("[A] breach of

contract claim cannot be 'bootstrapped' into a fraud claim merely by adding the words 'fraudulently induced.'")).  Even assuming there is a sufficient factual basis for Powhatan advancing such assertions regarding Crown's "state of mind," such averments do not change the origin of the duties allegedly breached by Crown or the manner by which Powhatan became subjected to the harm about which it complains.  Compare Caudill Seed and Warehouse Co., Inc. V. Prophet 21, Inc., 123 F. Supp.2d 826, 833-34 (E.D. Pa. 2000) (granting motion to dismiss fraud claims under gist of the action doctrine even though the defendant fraudulently strung the plaintiff along by repeatedly assuring that its products would work and live up to the promised benefits of the bargain); Harold v. McGann, 406 F. Supp.2d 562, 577 (E.D. Pa. 2005) (same). And the ability of Powhatan's counterclaim for breach of contract to provide complete relief for its asserted economic loss provides additional support under Pennsylvania law for barring Powhatan's fraudulent inducement claim as it relates to Crown's subsequent performance. Compare Werwinski v. Ford Motor Co., 286 F.3d 661, 680-681 (3rd Cir. 2002) (holding that Pennsylvania's economic loss doctrine barred both consumer protection and fraudulent inducement claims and reasoning that a prima facie ability to obtain a recovery in contract for the actual economic loss and the inability of that recovery to be affected by the defendant's state of mind provided additional justification for maintaining proper boundaries between contract and tort law).[2]

---

[2]     Pennsylvania courts use two methods to determine whether tort claims that accompany contract claims should be allowed as freestanding causes of action or rejected as illegitimate attempts to procure additional damages for a breach of contract: the "gist of the action" test and the "economic loss doctrine" test.  Bohler-Uddeholm American, Inc. v. Ellwood Group, Inc., 247 F.3d 79, 103 (3rd Cir. 2001), cert. denied, Ellwood City Forge Co. v. Bohler-Uddeholm America Inc., 534 U.S. 1162 (2002).
        The economic loss doctrine is designed to place a check on limitless liability for manufacturers and establish clear boundaries between tort and contract law.  Werwinski, 286 F.3d at 680-681.  In Pennsylvania, the economic loss doctrine precludes recovery for economic losses in a negligence action where the plaintiff has suffered no physical injury or property damage.  Aikens v. Baltimore & Ohio R.R. Co., 501 A.2d 277, 279 (Pa. Super. 1985) (no cause

It follows the Powhatan's claim for fraudulent inducement in the performance of the agreement is inimical to Pennsylvania's gist of the action doctrine. Consequently, Crown's motion to dismiss the claim will be granted.

Date: March 8, 2013

s/David Stewart Cercone
David Stewart Cercone
United States District Judge

cc:    Vincent M. Roskovensky, Esquire
       Gregory J. Krock, Esquire

       (*Via CM/ECF Electronic Mail*)

---

of action lies for negligence that causes only economic loss); <u>Rock v. Voshell</u>, 397 F. Supp.2d 616, 627-28 (E.D. Pa. 2005) (under Pennsylvania law economic loss doctrine bars negligence and negligence per se causes of action where damages are only for economic loss); <u>Eagle Traffic Control v. Addco</u>, 882 F. Supp. 417, 419 (E.D. Pa. 1995) (under Pennsylvania law economic loss doctrine applies to claims of negligent misrepresentation).

In <u>Werwinski</u>, the court acknowledged (1) the persuasive force of the well-developed gist of the action doctrine and (2) the Third Circuit's past recognition that "Pennsylvania state courts have exhibited a 'lack of hospitality to tort liability for purely economic loss'" in support its decision to extend the economic loss doctrine to intentional claims of fraudulent inducement in the arena of goods and products.   <u>Werwinski</u>, 286 F.3d at 680 (quoting <u>Aloe Coal Co. v. Clark Equip. Co.</u>, 816 F.2d 110, 119 (3d Cir.1987) and citing <u>Pub. Serv. Enter. Group, Inc.</u>, 722 F. 184, 193 (D. N.J. Supp. 1989) (recognizing "that Pennsylvania law is hostile to the recovery of economic losses in tort")).